## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## NORTHERN DIVISION

|  |  |
|---|---|
| THE UNITED STATES OF AMERICA | Crim. No.  WDQ-09-0288 |
| v. | Civil No. |
| KEVIN VAN WHITE |  |

\* \* \* \* \*

## MOTION TO CORRECT
## SENTENCE UNDER 28 U.S.C. § 2255

### INTRODUCTION

Petitioner, Kevin Van White, through undersigned counsel, James Wyda, Federal Public Defender, and Paresh S. Patel, Appellate Attorney, respectfully moves this Court to set aside the judgment in this case and correct his sentence pursuant to 28 U.S.C. § 2255.

On March 1, 2011, this Court sentenced Mr White as a career offender under U.S.S.G. § 4B1.1. One of the two requisite prior convictions that subjected him to a career offender sentence was for Maryland second degree assault. However, in light of the Supreme Court's recent decision in *Descamps v. United States*, 133 S. Ct. 2276 (2013), and the Fourth Circuit's subsequent decision in *United States v. Royal*, 731 F.3d 333, 340-42 (4th Cir. 2013), Mr. White is no longer a career offender. In *Royal*, the Fourth Circuit held that under the elements-driven categorical approach of *Descamps*, Maryland second degree assault can no longer qualify as a "crime of violence." *Id.* Thus, Mr. White does not have the two necessary predicate convictions (either "crimes of violence" or "controlled substance offenses") to qualify him as a career offender. As a result, Mr. White's currently imposed sentence of 140 months imprisonment violates the laws of the United States, results in a fundamental miscarriage of justice, and violates due process.

Mr. White's petition is timely under 28 U.S.C. § 2255(f)(3) because he filed it within one year of the Supreme Court's decision in *Descamps* – a ruling which established a "newly recognized" right that is "retroactively applicable to cases on collateral review." Mr. White respectfully requests that this Court grant this motion, vacate his sentence, and re-sentence him. As grounds for this motion, Mr. White states as follows.

## STATEMENT OF FACTS

On July 30, 2009, Mr. White pleaded guilty to one count of conspiracy to distribute and possess with intent to distribute a mixture containing a cocaine base in violation of 21 U.S.C. § 846. On March 1, 2011, this Court found Mr. White to be a career offender under U.S.S.G. § 4B1.1 after adopting the finding of the presentence report that he had two qualifying prior convictions necessary to support the career offender enhancement. Specifically, the presentence report noted that Mr. White had one prior Maryland conviction for second degree assault that qualified as a "crime of violence" and one prior conviction for Maryland possession with intent to distribute cocaine that qualified as a "controlled substance offense" under U.S.S.G. § 4B1.1.

This Court's application of the career offender provision to Mr. White subjected him to a Sentencing Guidelines range of 262 to 327 months imprisonment (corresponding to offense level 34, criminal history category VI). This Court varied from this guidelines range and sentenced Mr. White to a term of 140 months imprisonment. However, absent the career offender enhancement, Mr. White's Sentencing Guidelines range would have been 210 to 262 months imprisonment (corresponding to offense level 33 and criminal history category V), even before any departure or variance.

2

On June 20, 2013, the Supreme Court issued its decision in *Descamps v. United States*, 133 S. Ct. 2276 (2013), holding that when a prior offense is missing an element necessary to qualify as a "crime of violence" under a federal recidivist sentencing enhancement, the offense is indivisible and can never qualify as a "crime of violence" – regardless of the underlying facts of the case. On October 1, 2013, the Fourth Circuit, in *United States v. Royal*, 731 F.3d 333, 340-42 (4th Cir. 2013), relying on *Descamps*, held that Maryland second degree assault is an indivisible statute that can never qualify as a "crime of violence" because it is missing the elements necessary to qualify as a "crime of violence."

This petition follows.

## ARGUMENT

Under 28 U.S.C. § 2255(a), a defendant is entitled to a resentencing when his original sentence was imposed "in violation of the Constitution or laws of the United States." Mr. White is entitled to relief on both of these grounds. Because Mr. White's prior second degree assault conviction no longer qualifies as a "crime of violence" in light of *Descamps v. United States,* 133 S. Ct. 2276 (2013) and *United States v. Royal*, 731 F.3d 333, 340-42 (4th Cir. 2013), he is now serving an erroneous career offender sentence that violates the laws of the United States, results in a fundamental miscarriage of justice, and violates due process.

Additionally, Mr. White has filed a timely petition under 28 U.S.C. § 2255(f)(3) because he filed it within one year of the Supreme Court's decision in *Descamps* – a ruling which controls the outcome here and established a "newly recognized" right that is "retroactively applicable to cases on collateral review."

I.      **Under *Descamps v. United States*, a Prior Offense That Is Missing an Element Necessary to Constitute a "Crime of Violence" under the Career Offender Provision Can Never Qualify as a Career Offender Predicate.**

Under the career offender provision (U.S.S.G. § 4B1.1), a prior offense qualifies as a "crime of violence" if it satisfies the following definition:

> (a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –
>
> (1) has as an element the use, attempted use, or threatened use of physical force[1] against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a).

In determining whether a prior conviction qualifies as a "crime of violence" under the career offender provision, sentencing courts must employ the categorical approach. This means "[s]entencing courts may look only to statutory definitions – *i.e., the elements* – of a defendant's prior offenses, and *not* to the particular facts underlying those convictions." *Descamps*, 133 S. Ct. at 2283 (emphasis added) (internal citations and quotation marks omitted). "If the relevant statute has the same elements as the [career offender "crime of violence" definition], then the prior conviction can serve as a [career offender] predicate; so too if the statute defines the crime more

---

[1]      "Force" means "violent force", i.e. ""violent force," i.e., "strong physical force" that is "capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010).

narrowly, because anyone convicted under that law is necessarily guilty of all the ['crime of violence'] elements." *Id.* (internal citations and quotation marks omitted).[2]

At the same time, in a "narrow range of cases," sentencing courts may apply what is known as the "modified categorical approach" and look to a limited class of documents from the prior case to determine whether the prior conviction qualifies as a "crime of violence." *Id.* at 2283-84. Prior to *Descamps*, it was unclear as to when the modified categorical approach applied. However, "[i]n *Descamps*, the Supreme Court recently clarified whether courts may apply the modified categorical approach to assess, for [federal] sentencing enhancement purposes, the violent nature of a defendant's prior conviction under an indivisible criminal statute (*i.e.*, one that does not set out elements of the offense in the alternative, but which may nevertheless broadly criminalize qualitatively different categories of conduct.)." *Royal*, 731 F.3d at 340. Answering that question in the negative, the Court held that when a prior offense is missing an element necessary to constitute a "crime of violence," the offense is indivisible and can never qualify as a "crime of violence," even if the offense could be factually committed in a violent manner. *Descamps*, 133 S. Ct. at 2283. The Court explained that "the modified categorical approach serves a limited function: It helps effectuate the categorical analysis when a divisible statute, listing potential offense elements in the alternative,

---

[2]    Although *Descamps* specifically involved the definition of "violent felony" under the Armed Career Criminal Act, 18 U.S.C. § 924(e) (ACCA), it controls here. As the Fourth Circuit has repeatedly held, "The ACCA's definition of a 'violent felony' is nearly identical to and materially indistinguishable from the definition of a 'crime of violence' under the career offender enhancement of the Sentencing Guidelines. . . . We routinely rely on decisions interpreting either of those enhancement provisions in ascertaining whether a prior conviction is a crime of violence under the Guidelines or a violent felony under the ACCA." *United States v. Vann*, 660 F.3d 771, 773 n.2 (4th Cir. 2011) (en banc). Because the terms "violent felony" and "crime of violence" are identical, this pleading refers to them interchangeably.

renders opaque which element played a part in the defendant's conviction." *Id.* In other words, the *Descamps* Court held that the modified categorical approach only applies when a prior offense is divisible with alternative elements – some which match the federal "crime of violence" definition and some which do not. Only then can a federal sentencing court review documents in the prior case "to determine which of the statute's alternative elements formed the basis of the defendant's prior conviction." *Id.* at 2284.

In *Descamps,* at issue was whether a prior conviction under a California burglary statute (California Penal Code § 459) constituted a generic burglary (an "unlawful or unprivileged entry into, or remaining in, a building or structure with intent to commit a crime") satisfying the "violent felony" requirement under the Armed Career Criminal Act, 18 U.S.C. § 924(e) (ACCA). *Descamps,* 133 S. Ct. at 2282-83 (citation omitted). The California statute was missing the generic burglary element of unlawful entry. Nonetheless, the federal sentencing court applied a fact-driven modified categorical approach. The court did so by relying on the facts in the California plea colloquy to conclude that Mr. Descamps actually committed a generic burglary by breaking and entering a grocery store. *Id.* at 2282. The Ninth Circuit affirmed the district court's ruling. *Id.* The Supreme Court outright rejected the Ninth Circuit's approach and found that federal sentencing courts must follow an element-centric framework, in determining whether prior convictions qualify as federal sentencing recidivist predicates. *Id.* at 2287.

The Court explained that "Descamps may (or may not) have broken and entered, and so committed generic burglary. But [the California burglary statute] – the crime of which he was convicted – does not require the factfinder (whether jury or judge) to make that determination. Because generic unlawful entry is not an element, or an alternative element, of [the California

burglary statute], a conviction under the statute is never for generic burglary." *Id.* at 2293.  The Court further explained that the district court and the Ninth Circuit "erred in invoking the modified categorical approach to look behind Descamps' conviction in search of record evidence that he actually committed the generic offense." *Id.*  The Court then concluded that "[t]he modified categorical approach does not authorize a sentencing court to substitute such a facts-based inquiry for an elements-based one.  A court may use the modified categorical approach only to determine which alternative element in a divisible statute formed the basis of the defendant's conviction." *Id.*

In arriving at this holding, the Court pronounced that "the modified categorical approach [] acts not as an exception [to the categorical approach,] but instead as a tool.  It retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime.  And it preserves the categorical approach's basic method: comparing those elements with the generic offense's.  All the modified approach adds is a mechanism for making that comparison when a statute lists multiple, alternative elements, and so effectively creates several different . . . crimes." *Id.* at 2285 (internal quotation marks and citation omitted).  The Court reinforced that "[i]f at least one, but not all of those crimes matches the generic version, a court needs a way to find out which the defendant was convicted of.  That is the job . . . of the modified approach: to identify, from among several alternatives, the crime of conviction so that the court can compare it to the generic offense." *Id.*

The *Descamps* Court cautioned that merely because an offense can be committed by different multiple factual methods – some which equate to a "crime of violence" – does not mean the statute is divisible with alternative elements triggering the modified categorical approach. *Id.* at 2290-91.  Otherwise, "every element of every statute can be imaginatively transformed . . . so that every crime is seen as containing an infinite number of sub-crimes corresponding to all the possible ways an

individual can commit it.  (Think: Professor Plum, in the ballroom, with the candlestick?; Colonel Mustard, in the conservatory, with the rope, on a snowy day, to cover up his affair with Mrs. Peacock?)." *Id.* (internal quotation marks and citation omitted).

The Court further expounded, "If a sentencing court, as the Ninth Circuit holds, can compare each of those implied . . . means of commission to the generic ACCA offense, then the categorical approach is at an end.  At that point, the court is merely asking whether a particular set of facts leading to a conviction conforms to a generic ACCA offense." *Id.* at 2291.  The Supreme Court expressed that this factual inquiry is "forbidden." *Id.*  "Courts may *modify* the categorical approach to accommodate alternative statutory definitions.  They may not, by pretending that every fact pattern is an implied statutory definition, convert that approach into its opposite." *Id.* (internal quotation marks and citation omitted).

As further detailed below, applying *Descamps* to Mr. White's case requires the conclusion that his prior conviction for Maryland second degree assault  – an indivisible statute that is missing "crime of violence" elements – categorically fails to qualify as a career offender predicate crime.

**II.    As the Fourth Circuit Recently Held in *United States v. Royal*, Maryland Second Degree Assault Can Never Be Subject to the Modified Categorical Approach and Qualify as a Career Offender "Crime of Violence" under *Descamps* Because it Is an Indivisible Offense That Is Missing the Elements Necessary to Constitute a "Crime of Violence."**

Before *Descamps*, the Fourth Circuit, in *United States v. Kirksey*, 138 F.3d 120 (4th Cir. 1998) and *United States v. Coleman*, 158 F.3d 199 (4th Cir. 1998) (en banc), had held that a federal sentencing court could apply the modified categorical approach and consider the facts of the individual case, as alleged in certain documents, to determine whether a prior offense for Maryland second degree assault constituted a "crime of violence" *Coleman*, 158 F.3d at 201-02; *Kirksey,* 138 F.3d at 126.

However, these cases are no longer good law.  They cannot be reconciled with *Descamps*, as the Fourth Circuit recently made clear in *Royal.*  In *Royal*, 731 F.3d at 340-442, the Fourth Circuit, held that under *Descamps*' elements-driven holding, Maryland second degree assault can never qualify as a "crime of violence."  The Court reasoned that Maryland second degree assault is an indivisible offense, which is missing the elements necessary to qualify as a "crime of violence" *Id.* at *7.  The Court explained that because "Maryland's second-degree assault statute reaches any unlawful touching, whether violent or nonviolent and no matter how slight," a conviction under the statute categorically fails to qualify as a "crime of violence."  *Id.* (citation omitted).  Thus, Mr. White's prior second degree assault conviction can no longer be deemed a "crime of violence," and Mr. White is not a career offender.

### III.    Mr. White is Entitled to Habeas Relief Because His Current Career Offender Sentence Violates the Law of the United States, Results in a Fundamental Miscarriage of Justice, and Violates Due Process.

Because Mr. White's prior second degree assault conviction no longer qualifies as a "crime of violence," his career offender sentence is now in violation of the laws of the United States and due process and results in a fundamental miscarriage of justice.  Thus, it must be vacated under 28 U.S.C. § 2255(a).

### A.    An erroneous career offender sentence violates the laws of the United States and results in a fundamental miscarriage of justice.

In  *Whiteside v. United States*, __ F.3d __, 2014 WL 1364019 (4th Cir. 2013),  the Fourth Circuit held that an erroneous career offender enhancement violated the laws of the United States and resulted in a fundamental miscarriage of justice, even though the sentence was imposed after *United States v. Booker*, 543 U.S. 220 (2005) under the advisory guidelines scheme.  The Court vacated the defendant's sentence under 28 U.S.C. § 2255 upon emphasizing that "Congress has

given us the authority on collateral review to relieve errors that amount to fundamental defects in process or justice.  Erroneous application of the career offender enhancement works such an injustice, and we will not turn a blind eye to so obvious an error."  *Whiteside*, 2014 WL 1364019, at *11.  The Court  provided that "[b]y no rubric can the impact of the career offender enhancement be considered 'ordinary.'" *Id.* at *8.  The *Whiteside* Court gave several reasons for its decision.

      **1.**    **An erroneous career offender results in severe injustice because it increases the defendant's  sentencing guidelines range to near the statutory maximum penalty.**

First, the *Whiteside* Court explained that an erroneous career offender enhancement results in a severe injustice because it catapults a defendant's sentencing guidelines range to near the statutory maximum penalty authorized for the offense.  "Unlike most of the Guidelines, which are based on policy calculations of the Sentencing Commission, the career offender enhancement derives from a congressional requirement."  *Id.* at *8.  Congress directed that the "[t]he Commission shall assure that the [G]uidelines specify a sentence to a term of imprisonment at or near the maximum term authorized" for those who qualify for a career offender enhancement.  *Id.* (citing 28 U.S.C. § 994(h)).  "Heeding this charge, the Commission fashioned strict penalties for career offenders: their criminal history categories are automatically boosted to VI, the highest possible rung, and their offense levels become tied to the statutory maximum penalty as opposed to the actual conduct of conviction."  *Whiteside*, 2014 WL 1364019, at *8 (citing U.S.S.G. § 4B1.1(b)).  Thus*,* the enhancement "creates a category of offenders subject to a particularly severe punishment."  *Id.* (quoting *Buford v. United States*, 532 U.S. 59 (2001)).

2. **The advisory nature of the guidelines does not negate the manifest injustice resulting from an erroneous career offender enhancement because post-*Booker*, the guidelines are still the "lodestone" of federal sentencing.**

Second, the *Whiteside* Court explained that the advisory nature of the guidelines does not negate the manifest injustice resulting from an erroneous career offender enhancement because post-*Booker*, the Guidelines still have a controlling influence and "are the heart of the substantive law of federal sentencing." 2014 WL 1364019, at *7 (citation omitted). Central to the Court's reasoning was the Supreme Court's decision in *Peugh v. United States*, 133 S. Ct. 2072 (2013).

In *Peugh*, the Supreme Court held that the retroactive application of a guideline that increases a defendant's applicable guidelines range violates the Ex Post Facto Clause of the Constitution. *Id.* at 2084. In so doing, the Court reaffirmed that "district courts must begin their analysis with the guidelines and remain cognizant of them throughout the sentencing process." *Whiteside*, 2014 WL 1364019, at *7 (citing and quoting *Peugh* at 2083). Because district courts are required to start with the guidelines, the Supreme Court provided that the guidelines are still the "lodestone of sentencing," and "[t]he post-*Booker* federal sentencing scheme aims to achieve uniformity by ensuring that sentencing decisions are *anchored* by the Guidelines . . . ." *Peugh*, 133 S. Ct. at 2083 (citation omitted) (emphasis added). As a result, the Supreme Court explained that most defendants still receive within-guidelines sentences. *Id.* at 2084.

Relying on *Peugh*, the *Whiteside* Court held that "we cannot pretend, that because of *Booker*, career offender status no longer matters to a sentence length. Instead, an erroneous career offender Guideline calculation, even though advisory, . . . can amount to a fundamental defect in the sentencing analysis." 2014 WL 1364019, at *7 (citations omitted).

In further support of this point, the *Whiteside* Court pointed to the Sentencing Commission's data showing the continued impact of the career offender enhancement on sentences administered after *Booker*: "[I]n 2012, the mean sentence for criminal history category VI *non*-career offenders was 84 months and the median was 60 months.  For career offenders, those figures increased to a mean of 163 months and a median of 151 months."  *Whiteside*, 2014 WL 1364019, at *8.

Even more, the *Whiteside* Court held that even when district courts depart or vary downward from erroneous career offender guideline enhancements, as was true in *Whiteside*, this still results in a miscarriage of justice because the career offender guideline remains the starting point, and thereby, "retain[s] its anchoring effect throughout [the defendant's] sentencing.  It is just that the anchor was dropped in the wrong place."  *Id.*  Indeed, the Supreme Court recognized this effect in *Peugh*, stating that "[e]ven if the sentencing judge sees a reason to vary from the Guidelines, if the judge uses the sentencing range as the beginning point to explain the decision to deviate from it, *then the Guidelines are in a real sense the basis for the sentence*."  *Peugh*, 133 S. Ct. at 2083 (internal quotation marks and citations omitted) (emphasis added).

Mr. White's case is representative of an erroneous career offender enhancement's dramatic impact.  Mr. White's unlawful career offender guidelines range was 262 to 327 months imprisonment.  Although this Court varied from this sentence, the Court used this range as the starting point for the variance.  Thus, the career offender guideline controlled his sentence.  Absent the career offender enhancement, this Court's starting range would have been much lower at 210 to 262 months imprisonment, before any departures or variance.

Thus, "[b]ecause of the career offender enhancement, [Mr. White's] sentence is plainly at odds with what he would receive were he sentenced today.  He is not a career offender, and he

should not serve a sentence that was based on his classification as one." *Whiteside,* 2014 WL 1364019, at *10. This "fundamental unfairness" must be remedied under § 2255. *Id.*

> **3.      The miscarriage of justice in Mr. White's case is particularly egregious because the Fourth Circuit's precedent squarely foreclosed him from obtaining relief from his erroneous career offender enhancement before *Descamps*.**

In *Whiteside*, the Fourth Circuit held that the miscarriage of justice in that case was aggravated by the fact that "Whiteside's opportunity for [attacking his career offender sentence] did not arise until after the period in which to file the direct appeal had lapsed. Had Whiteside challenged his career offender status on direct appeal, his argument would have been rejected by [this Court's then-existing precedent that squarely held he was a career offender]." 2014 WL 1364019, at *10. The Court elaborated, " He should not be punished, as in additional time spent in federal prison, time which the law does not countenance – for this fact." *Id.* Because Whiteside was foreclosed from seeking relief from his erroneous career offender sentence prior to filing his § 2555 petition due to the Fourth Circuit's binding precedent, the Court concluded that a "denial of review under [§ 2255] operates a complete miscarriage of justice." *Id.*

Mr. White suffers from the same injustice. The Fourth Circuit's precedent squarely foreclosed him from obtaining relief from his career offender sentence until now. As earlier explained, in *Kirksey*, 138 F.3d 120 and *Coleman*, 158 F.3d 199, the Fourth Circuit directly held that Maryland second degree assault offenses could qualify as "crimes of violence" under the career offender provision. This binding precedent was only overruled by *Descamps*, 133 S. Ct. 2276*,* and *Royal*, 731 F.3d at 340-42. Thus, through no fault of his own, Mr. White had no avenue for relief from his career offender sentence before now. Hence, denying relief in his case would also "operate[] a complete miscarriage of justice." *Whiteside*, 2014 WL 1364019, at *10.

13

**B.     Mr. White's erroneous career offender enhancement violates due process because it is fundamentally unfair and it removed the federal sentencing court's discretion to impose a sentence divorced from the career offender guideline range.**

Mr. White's erroneous career offender sentencing enhancement not only resulted in a fundamental miscarriage of justice, but it also violated his due process rights. It did so because it erroneously removed the federal sentencing court's discretion to start the guidelines calculations at a lower point. After this Court erroneously determined that Mr. White was a career offender, it had no choice but to start with the unlawful career offender guideline, and the entire sentence remained informed by the unlawful career offender guideline. As the Supreme Court made clear in *Peugh*, the sentencing court "*must begin [its] analysis with the Guidelines and remain cognizant of them throughout the sentencing process.*" 133 S. Ct. at 2083 (citation omitted) (emphasis added). Hence, the Court in Mr. White's case had no discretion to change the starting point. This lack of discretion to be free of the erroneous career offender guideline range resulted in an unjustified loss of liberty for Mr. White.

The fundamental character of that deprivation is confirmed by the Court's holding in *Hicks v. Oklahoma*, 447 U.S. 343, 346-47 (1980). In that case, the jury charged with sentencing authority under state statutes, was improperly instructed to sentence a defendant to a mandatory 40 years rather being properly instructed that it had discretion to choose any sentence over 10 years. The Supreme Court held that the erroneous removal of sentencing discretion from the jury violated due process because "[t]he defendant . . . has a substantial and legitimate expectation that he will be deprived of his liberty only to the extent determined by the jury *in the exercise of its statutory discretion.*" *Id.* at 346 (citation omitted) (emphasis added).

In this same way, when a federal sentencing court erroneously finds a defendant to be a career offender, as it did in Mr. White's case, it unlawfully removes its sentencing discretion to impose a punishment free of the career offender guideline. This violates a defendant's due process right to have the court, in the exercise of its discretion, impose a sentence that is disconnected from that range. In Mr. White's case, this lack of discretion resulted in an erroneous career offender sentence that increased his guidelines range by years.

Finally, as the Supreme Court has held, erroneous recidivist enhancements are so fundamentally unfair that they result in a violation of due process. *See United States v. Tucker*, 404 U.S. 443, 593 (1972) (sentence based on invalid convictions was "sentence found at least in part upon misinformation of constitutional magnitude"); *Townsend v. Burke*, 334 U.S. 736, 741 (1948) (a sentence formed "on the basis of assumptions concerning [one's] criminal record which [are] materially untrue" is "inconsistent with due process of law.").

In sum, Mr. White is entitled to § 2255 relief because his career offender sentence violates the United States laws, results in a fundamental miscarriage of justice, and tramples his due process rights.

**IV.    The Petition Is Timely under 28 U.S.C. § 2225(f)(3).**

The petition here is timely under section 2255(f)(3). That section provides that a one-year limitations period runs from the "date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). *Descamps* was decided on June 20, 2013, and the petition was filed on June 10, 2014, within one year of the decision in *Descamps*. *See Dodd v. United States*, 545 U.S. 353, 357-58 (2005) (Section 2255(f)(3) runs from the date on

which the Supreme Court recognizes the new right.); *United States v. Mathur*, 685 F.3d 396, 398 (4th Cir. 2012). Because *Descamps* established a "newly recognized" right that is "retroactively applicable to cases on collateral review," the petition is timely under section 2255(f)(3).

### A. *Descamps* Established A Newly Recognized Right.

The first requirement of section 2255(f)(3) is satisfied here because the right at issue in *Descamps* was "newly recognized by the Supreme Court." A right is "newly recognized" if it is a "new" right for purposes of retroactivity doctrine, *i.e.*, reasonable jurists considering the claim would not have felt compelled by precedent to rule in the defendant's favor.[3] Section 2255(f)(3) concerns the availability of "retroactive[]" relief, and was enacted against the backdrop of years of Supreme Court precedent on retroactivity that established a clear meaning to the phrase "new" right. *See Caspari v. Bohlen*, 510 U.S. 383, 389-90 (1994) (collecting *Teague* cases). By using the phrase "new[] right" in a provision addressing the availability of retroactive relief, Congress plainly adopted

---

[3]     The Fourth Circuit has previously indicated that the Supreme Court's retroactivity precedents essentially guide the question of whether a right is "newly recognized" under section 2255(f)(3). *See United States v. Hopkins*, 268 F.3d 222, 225 n.2 (4th Cir. 2001) ("Because this case deals with the issue of a 'newly recognized' right, rather than the retroactivity of a new constitutional rule, the Supreme Court's decision in *Teague v. Lane* . . . is not controlling. Retroactivity of new rules is a narrower concept than the initial recognition of new rights because the former is limited to constitutional claims. We nonetheless find *Teague* instructive. It teaches that 'a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government …. To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction becomes final." (quoting *Teague v. Lane*, 489 U.S. at 301)). Other circuits have more explicitly adopted *Teague v. Lane*'s test for what constitutes a "new" right to determine whether a right is "newly recognized" under section 2255(f)(3). *E.g.*, *Figuerero-Sanchez v. United States*, 678 F.3d 1203, 1207-08 (11th Cir. 2012).

the well-settled meaning that the phrase "new[] right" has in retroactivity doctrine.[4]  *See Merck &
Co. v. Reynolds*, 559 U.S. 633, 648 (2010) ("We normally assume that, when Congress enacts
statutes, it is aware of relevant judicial precedent.  Given the history and precedent surrounding the
use of the word 'discovery' … the reasons for making this assumption are particularly strong here.")
(citations omitted).  Therefore, a "newly recognized" right under section 2255(f)(3) refers to a right
that is "new" for purposes of retroactivity principles.  Under retroactivity doctrine, a right is new
unless "the rule … was *dictated* by then-existing precedent—whether, that is, the unlawfulness of
[the defendant's] conviction was apparent to all reasonable jurists." *Lambrix v. Singletary*, 520 U.S.
518, 527-28 (1997).  "In other words, a rule is 'new' if reasonable jurists considering the claim
would not 'have felt *compelled* by existing precedent' to rule in [the defendant's] favor." *Smith v.
Moore*, 137 F.3d 808, 820 (4th Cir. 1998).

    *Descamps* is plainly a new right in this sense.  The issue in *Descamps* was a novel question
about the applicability of the modified categorical approach.  The Court had to decide whether the
categorical approach, as opposed to the modified categorical approach, applied to indivisible statutes
that cover more criminal conduct than the federal "crime of violence" definition but do not have
alternative elements – some which match the "crime of violence" definition and some which do not.

---

[4]    The inference that Congress adopted the established meaning of the phrase "new[]
right" is particularly strong where, as here, the phrase "new[] right" is a legal term of art in the
context of retroactivity.  *See McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 342 (1991) ("In the
absence of contrary indication, we assume that when a statute uses such a term, Congress
intended it to have its established meaning.").  Moreover, the Supreme Court has already
determined that Congress adopted other aspects of the Court's retroactivity jurisprudence in the
AEDPA even where Congress did not use well-settled legal terms of art.  *See, e.g.*, *Williams v.
Taylor*, 529 U.S. 362, 411 (2000) ("With one caveat, whatever would qualify as an old rule under
our *Teague* jurisprudence will constitute 'clearly established Federal law, as determined by the
Supreme Court of the United States' under § 2254(d)(1).") (opinion of the O'Connor, J., for the
Court).

*See Descamps*, 133 S. Ct. at 2283-2285. Under the categorical approach, a court can look only to the elements of the offense of conviction to determine whether a defendant has been convicted of a "crime of violence," whereas under the modified categorical approach, a court can consult additional documents to determine whether a defendant has been convicted of a "crime of violence." By announcing whether the categorical approach, as opposed to the modified categorical approach, applies where a defendant has been convicted under a broad, indivisible statute that is lacking "crime of violence" elements, *Descamps* was not a mere application of the Court's prior precedents, but a new principle of law. *See Chaidez v. United States*, 133 S. Ct. 1103, 1108 (2013) (*Padilla* is new rule because "prior to asking *how* the *Strickland* test applied …, *Padilla* asked *whether* the *Strickland* test applied").

### 1.    Prior to *Descamps*, reasonable jurists would not have felt compelled by then-existing precedent to rule in the defendant's favor.

Prior to *Descamps*, reasonable jurists would not have felt compelled by then-existing precedent to hold, as the Court did in *Descamps*, that the modified categorical approach does not apply to indivisible statutes that are missing elements necessary to constitute a "crime of violence." *Descamps* primarily relied on two Supreme Court cases that commented on the categorical and modified categorical approach, *Taylor v. United States*, 495 U.S. 575 (1990), and *Shepard v. United States*, 544 U.S. 13 (2005),[5] but neither precedent compelled the outcome in *Descamps*. *Taylor* was primarily concerned with a different question—the meaning of the word "burglary" under the

---

[5]    *Descamps* also briefly referenced *Nijhawan v. Holder*, 557 U.S. 29 (2009), and *Johnson v. United States*, 559 U.S. 133 (2010). *Nijhawan*, however, interpreted a provision of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii), and *Johnson* was primarily concerned with the meaning of "physical force" in the first clause of the ACCA, § 924(e)(2)(B)(i).

ACCA—and only alluded in one paragraph to the possibility that the question at issue in *Descamps* would ever arise.  *Taylor* interpreted the word "burglary" under the ACCA and held that the phrase had its generic meaning.  *See* 495 U.S. at 599 ("We conclude that a person has been convicted of burglary for purposes of a § 924(e) enhancement if he is convicted of any crime … having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime.").  *Taylor* itself described the question in the case as "the meaning of the word 'burglary' as it is used in … the Career Criminals Amendments Act of 1986."  *Id.* at 577.  *Taylor* therefore was not primarily concerned with how to apply this definition to various state statutes that have different elements.  *See* 495 U.S. at  599 ("There remains the problem of applying this conclusion.").

Taylor did, however, provide some guidance on this issue.  The opinion suggested that, to determine whether a defendant has been convicted of a "crime of violence" under a federal recidivist sentencing enhancement, sentencing courts should, as a general rule, "look only to the fact of conviction and the statutory definition of the prior offense." 495 U.S. at 602.  But *Taylor* also stated that "[t]his categorical approach *may*" be subject to exceptions, such as "cases where a jury was actually required to find all the elements of generic burglary."  *Id.* (emphasis added).  To illustrate this exception, *Taylor* hypothesized a state burglary statute that included entry of an automobile as well as a building.  *Id.* at 602; *see Descamps*, 133 S. Ct. at 2283-84 ("[W]e hypothesized a statute with alternative elements.").  In cases such as this, *Taylor* acknowledged, a sentencing court may look beyond the statutory elements to "the charging paper and jury instructions."  *Descamps*, 133 S. Ct. at 2284.  But *Taylor* did not definitively answer the question at issue in *Descamps*, namely

whether this could also be true in some cases where a defendant was convicted under a statute that, *without alternative elements*, criminalized a broader range of conduct than the generic offense.

*Shepard* is even further removed from the question at issue in *Descamps*. *Shepard* assumed that *Taylor*'s modified categorical approach applied, whereas the question at issue in *Descamps* was *whether* the modified categorical approach applied in the first instance. In other words, *Shepard* proceeded under the assumption that the sentencing court properly consulted an additional set of documents aside from the fact of conviction and the statutory definition of the prior offense, and the only question in *Shepard* was what additional set of documents the court should have consulted. *See* 544 U.S. at 20 ("Our job, then, is to find the right analogs for applying the *Taylor* rule to pleaded cases."); *id.* at 26 ("We hold that enquiry under the ACCA to determine whether a plea of guilty to burglary defined by a nongeneric statute necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant …, or to some comparable judicial record of this information.").

2. **Justice Alito's strong dissent in *Descamps* is a clear indication that prior reasonable jurists differed on the applicability of the modified categorical approach.**

There are several other clear indications that the rule in *Descamps* is new, including Justice Alito's strong dissent in that case. *See Beard v. Banks*, 542 U.S. 406, 415-16 (2002) (noting presence of dissents indicates that "reasonable jurists differed" and therefore that announced rule is new); *United States v. Morris*, 429 F.3d 65, 71 (4th Cir. 2005) ("[T]he fact that these Justices dissented supports the conclusion that the … rule is new."). In his dissent, Justice Alito examined the statutes at issue in the Court's prior precedents and concluded that, in those cases, "the Court thought that the modified categorical approach could be used in relation to statutes that may not have

been divisible." *Descamps*, 133 S. Ct. at 2297 (Alito, J., dissenting). "Far from mandating the Court's approach," Justice Alito wrote, "these decisions support [the] practical understanding of the modified categorical approach" embodied in his dissent. *Id.* at 2299 (Alito, J., dissenting). Indeed, Justice Alito maintained not only that the majority position was not *compelled* by the Court's precedents, but that the Court's precedents compelled the *opposite* rule than what the Court announced in *Descamps*. *See id.* at 2298-2299.

<strong>3. The division among the federal courts of appeal on the question presented in <em>Descamps</em> further indicates that the rule announced in <em>Descamps</em> is new.</strong>

The division among the federal courts of appeal on the question presented in *Descamps* further indicates that the rule announced in *Descamps* is new. *See Caspari*, 510 U.S. at 395 (novelty of rule evidenced by "[t]wo Federal Courts of Appeals and several state courts … reach[ing] conflicting holdings on the issue"); *United States v. Martinez*, 139 F.3d 412, 417 (4th Cir. 1998) (novelty of rule evidenced by "*seven* circuit courts of appeals" reaching contrary result). Prior to *Descamps*, the courts of appeal were divided on the pertinent question, *see Descamps*, 133 S. Ct. at 2283 ("We granted certiorari to resolve a Circuit split on whether the modified categorical approach applies to statutes like § 459 that contain a single, 'indivisible' set of elements sweeping more broadly than the corresponding generic offense.") (citation omitted), with at least two courts of appeals having held, contrary to the rule later established in *Descamps*, that the modified categorical approach applied to broad, indivisible statutes. *See, e.g.*, *United States v. Aguila-Montes de Oca*, 655 F.3d 915 (9th Cir. 2011) (en banc); *United States v. Armstead*, 467 F.3d 943, 947-48 (6th Cir. 2006). Moreover, Chief Judge Easterbrook, joined by Judges Posner and Tinder, advocated applying the modified categorical approach in cases where the defendant was not convicted under a divisible

statute, contrary to the rule in *Descamps*.  *See United States v. Woods*, 576 F.3d 400, 414 (7th Cir. 2009) (Easterbrook, J., dissenting).  "That the outcome in [*Descamps*] was susceptible to debate among reasonable minds is evidenced … by the differing positions taken by the judges of the[se] Courts of Appeals."  *Butler v. McKellar*, 494 U.S. 407, 415 (1995)).

### 4. The Fourth Circuit's recent ACCA cases confirm *Descamps'* novelty.

Additionally, the Fourth Circuit's recent cases confirm *Descamps*' novelty.  Relying on *Descamps*, the Fourth Circuit reversed course and held that Maryland's version of second-degree assault does not qualify as a "crime of violence."  *See Royal*, 731 F.3d at 340-42.  As earlier referenced, the Fourth Circuit had previously held that Maryland second degree assault qualified as a "crime of violence."  *See Kirksey*, 138 F.3d 120; *Coleman*, 158 F.3d 199.  In *Coleman*, the *en banc* court explained that "because one of the ways in which a Maryland common-law assault can be committed involves the use, attempted use, or threatened use of physical force … the district court *properly looked beyond the fact of conviction and the elements of the offense* to determine whether the particular offense … was a violent felony."  158 F.3d at 202 (emphasis added).  Yet this is precisely what *Descamps* forbade—looking beyond the elements of an offense where a defendant has been convicted of a crime under a broad, indivisible offense that is missing an element necessary to constitute a "crime of violence."  *See Royal*, 731 F.3d at 340 ("*Descamps* … clarified whether courts may apply the modified categorical approach to assess … the violent nature of a defendant's prior conviction under an indivisible criminal statute.").  That *Descamps* caused the Fourth Circuit to reverse itself confirms that the *Descamps* rule is new.

### 5.    Certain language in *Descamps* does not defeat its novelty.

Finally, *Descamps*' statements that prior case law "all but resolve[d]" the case do not suggest

the rule announced in *Descamps* is not new.  133 S. Ct. at 2283.  *Butler v. McKellar* cautioned that

"the fact that a court says that its decision is within the 'logical compass' of an earlier decision, or

indeed that it is 'controlled' by a prior decision, is not conclusive for purposes of deciding whether

the current decision is a 'new rule' under *Teague*.  Courts frequently view their decisions as being

'controlled' or 'governed' by prior opinions even when aware of reasonable contrary conclusions

reached by other courts."  494 U.S. 407, 415 (1990).  *See also Martinez*, 139 F.3d at 418; *O' Dell

v. Netherland*, 95 F.3d 1214, 1223-24 (4th Cir. 1996) (en banc), *aff'd*, 521 U.S. 151 (1997) ("[D]icta

used in opinions to underscore their faithfulness to precedent … [is] not . . . binding upon the

separate question of whether they announced a new rule under *Teague*.").  Moreover, *Descamps*

elsewhere acknowledged that the Court's prior precedents did not squarely resolve the case.

*Descamps* noted that *Taylor* only "hypothesized" one kind of statute that would permit a court to

consider documents aside from the fact of conviction and the statute underlying the conviction.  *See*

133 S. Ct. at 2283-84; *id.* at 2284 ("In *Shepard* . . . the hypothetical we posted in *Taylor* became

real.").  *Descamps* also recognized that *Shepard* held only that "*Taylor*'s categorical approach

applies not just to jury verdicts," and "authorized sentencing courts to scrutinize a restricted set of

materials" to determine the defendant's crime of conviction.  133 S. Ct. at 2284.

### B.    *Descamps* Is "Retroactively Applicable To Cases On Collateral Review" Because It is Substantive.

The second requirement of  section 2255(f)(3) is also satisfied here because *Descamps* is

"retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3).  It is well settled that

the decision to make a new rule retroactive for purposes of this section can be made by any lower

court – including the district court itself. *United States v. Thomas*, 627 F.3d 534, 536-37 (4th Cir. 2010).[6] This Court should declare *Descamps* retroactive because it announced a substantive rule by limiting the category of persons whom the law can punish as armed career criminals, and in turn, career offenders, who share the same "crime of violence"/ "violent felony" requirements. And defense counsel understands that the Solicitor General's Office has issued a memorandum to all U.S. Attorney's Offices stating the same and advising them not to contest the retroactive application of *Descamps*. Indeed, following this direction, the U.S. Attorney's Office in the Southern District of California conceded *Descamps*' retroactivity, and the district court agreed. *See United States v. Isidoro*, 2013 WL 5353001, at *2 (S.D. Cal. Sept. 30, 2013) (granting § 2255 relief upon agreeing with U.S. Attorney that *Descamps* is retroactive). Thus, defense counsel does not expect the U.S. Attorney's Office to flout the Solicitor General's advice and contest *Descamps*' retroactivity. Nonetheless, we include the discussion below for the Court's benefit.

Under *Teague v. Lane*, 489 U.S. 288, a new rule applies retroactively if the rule is substantive. *See Schriro v. Summerlin*, 542 U.S. 348, 351 (2004) ("As to convictions that are already final … [n]ew *substantive* rules generally apply retroactively."). "A new rule is substantive 'if it alters the range of conduct or the class of persons that the law punishes.'" *Miller v. United States*, 735 F.3d 141, 145 (4th Cir. 2013) (quoting *Schriro*, 542 U.S. at 353)). "New substantive rules … include[] decisions that narrow the scope of a criminal statute by interpreting its terms, as

---

[6]    *See Thomas*, 627 F.3d at 536 (citing *Wiegand v. United States*, 380 F.3d 890, 892 (6th Cir. 2004) (holding that "any federal court can make the retroactivity decision" for purposes of § 2255(f)(3)); *Dodd v. United States*, 365 F.3d 1273, 1278 (11th Cir. 2004) (noting that "every circuit to consider this issue has held that a court other than the Supreme Court can make the retroactivity decision for purposes of § 2255[(f)(3)]").

well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish." *Schriro*, 542 U.S. at 351-352 (citation omitted).  By contrast, "[n]ew rules of procedure … do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise." *Id.* at 352.

> ### 1.   *Descamps* announced a substantive rule because the decision narrowed the class of person whom the law could punish.

*Descamps* announced a substantive rule because the decision  narrowed the class of persons whom the law could punish.  Specifically, *Descamps* narrowed the scope of what constitutes a "crime of violence" and therefore changed the category of persons who can be sentenced as career offenders.   *Descamps* therefore applies retroactively because, after *Descamps*, " there is 'a significant risk that a defendant … faces a punishment that the law cannot impose upon him.'" *Miller v. United States,* 735 F.3d at 145.

> ### 2.   *Descamps* is similar to the Supreme Court's decisions in *Begay v. United States* and *Chambers v. United States* – decisions which every Circuit has concluded are substantive.

In this respect, *Descamps* is similar to the Supreme Court's recent prior decisions in *Begay v. United States*, 553 U.S. 137 (2008), and *Chambers v. United States*, 555 U.S. 122 (2009).  These decisions narrowed the scope of the ACCA residual clause, which is identical to the residual clause in the career offender provision.[7]  Every Circuit to have addressed the question has concluded that these Supreme Court decisions are substantive and therefore retroactively apply on collateral review.

---

[7]      This is the clause in the ACCA and career offender provisions which provides that a prior offense is a "crime of violence"/ "violent felony" when the offense "otherwise involves conduct that presents a serious potential risk of physical injury to another."  U.S.S.G. § 4B1.2(a)(2); 18 U.S.C. § 924(e)(2)(B)(ii).

Both *Begay* and *Chambers* limited the types of convictions that satisfy the residual clause.  *Begay* held that, to qualify as a "violent felony" under the residual clause, an offense must be "roughly similar, in kind" to the enumerated offenses, which "typically involve purposeful, violent, and aggressive conduct."  553 U.S. at 143, 145-46.  *Chambers* held that failure to report for penal confinement is not a "violent felony" under the residual clause because it is "a form of inaction, a far cry from the purposeful, violent, and aggressive conduct" of the enumerated offenses.  555 U.S. at 128 (quotation marks omitted).

Because these decisions limit a defendant's eligibility for an ACCA or a career offender sentencing enhancement, the Circuits have held that *Begay* and *Chambers* are substantive and therefore retroactively applicable to cases on collateral review.  *See, e.g.*, *Spencer v. United States*, 727 F.3d at 1096 (*Begay* retroactively applicable in career offender case); *Narvaez*, 674 F.3d at 623 (*Begay* and *Chambers* retroactively applicable in career offender case ); *Jones v. United States*, 689 F.3d 621, 625 (6th Cir. 2012) (*Begay* retroactively applicable in ACCA case); *Welch v. United States*, 604 F.3d 408, 415 (7th Cir. 2010) (*Begay* retroactively applicable in ACCA case); *Lindsey v. United States*, 615 F.3d 998, 1000 (8th Cir. 2010) (*Begay* retroactively applicable in ACCA case); *Shipp*, 589 F.3d 1084, 1090 (10th Cir. 2009) (*Chambers* retroactively applicable in ACCA case). These Courts all reasoned that *Begay* and *Chambers* altered the punishment that the law could impose on a specific category of offenders.  This resulted in a substantive liability." *Welch*, 604 F.3d at 415.  The same is true for *Descamps*—the decision altered the punishment that can be imposed on the class of  defendants convicted under broad, indivisible statutes that are missing elements constituting "crimes of violence."

### 3.   Recent Fourth Circuit precedent confirms that *Descamps* is substantive, and thus, retroactive.

The Fourth Circuit's prior cases confirm that *Descamps* is substantive and therefore retroactively applicable. In *Miller*, 735 F.3d at 145-46, the Fourth Circuit held that its prior decision in *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011), was substantive. *Miller* explained that, under *Simmons*, certain "felony convictions do not qualify as predicate felonies for purposes of federal law, and those defendants are actually innocent of the § 922(g)(1) offense of which they were convicted." *Id.* at 146. Because "*Simmons* altered 'the class of persons that the law punishes,' [it] announced a substantive rule that is retroactively applicable." *Id.* *Descamps*, like *Simmons*, "narrowed the scope of [the ACCA and career offender provisions] by establishing that it does not reach defendants whose prior convictions" are under excessively broad indivisible statutes. *Id.* *Descamps*, thereby, "altered 'the class of persons that the law punishes.'"[8] *Id.*

To be sure, the ACCA and career offender provisions involve sentencing enhancements, and *Descamps* does not render the underlying conduct—possession a firearm by certain classes of persons—no longer criminal. But *Descamps* is nonetheless a substantive rule because it alters the class of persons the law punishes. *Miller*, 735 F.3d at 146.

---

[8]    For this reason, the Fourth Circuit's decision in *United States v. Powell* is inapposite. 691 F.3d 554 (4th Cir. 2012). *Powell* held that the Supreme Court's decision in *Carachuri-Rosendo v. Holder*, 560 U.S. 563 (2010), did not apply retroactively. *Carachuri-Rosendo* addressed the scope of "an INA condition that prohibits discretionary cancellation of an order of removal." *Powell*, 691 F.3d at 558. The INA, however, is a *civil* statute. *See id.* at 559. *Powell* therefore reasoned that "[t]he Supreme Court's holding in *Carachuri* altered neither 'the range of conduct' nor the 'class of persons' that could be punished under any criminal statute.". *Id.*; *see also id.* at 559-60 ("*Carachuri* … did not alter the range of conduct or the class of persons subject to criminal punishment."). *Descamps*, unlike *Carachuri*, altered the class of persons that can be criminally punished, and *Powell* therefore does not suggest *Descamps* is not substantive.

To the extent the decision in *Descamps* has some procedural aspects, it nonetheless qualifies as a substantive rule as that phrase is used in retroactivity doctrine. *Descamps* is plainly not a procedural rule. "[R]ules of procedure … merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise." *Schriro*, 542 U.S. at 352. But *Descamps* did not concern the procedure by which a defendant was convicted; *Descamps* changed whether a defendant's prior convictions qualify him for a severe recidivist sentencing enhancement. The fact that *Descamps* describes a method for determining whether a conviction constitutes a "crime of violence" does not change the fact that the decision interprets what constitutes a "crime of violence" and alters the range of punishment and the class of persons to be punished under the career offender provision.

## CONCLUSION

For the reasons set forth above, Mr. White respectfully asks this Court to immediately vacate his unlawful sentence and schedule a new sentencing hearing so that he can be resentenced without application of the career offender provision. Mr. White's non-career offender Sentencing Guidelines range is 210 to 162 months imprisonment (offense level 33, criminal history category V), before any departure or variance.

Respectfully submitted,

JAMES WYDA
Federal Public Defender

_____/s/_____
PARESH .S PATEL,
Appellate Attorney
6411 Ivy Lane, Ste. 710
Greenbelt, Maryland
(301) 344-0600

28

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 10th day of June, 2014, a copy of the foregoing Motion to Correct Sentence Under 28 U.S.C. §2255 was delivered via electronic filing to Michael C. Hanlon, Assistant United States Attorney, Office of the United States Attorney, 36 South Charles Street, 4th Floor, Baltimore, Maryland 21201-2692.

_____/s/_____
PARESH S. PATEL
Appellate Attorney